IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID CABELLO, | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-08-1334 |
| vs. | : |
| | : (Judge Caldwell) |
| JAMES L. GRACE, | : |
| SUPERINTENDENT, *ET AL.*, | : |
| Defendants | : |

*M E M O R A N D U M*

*I.    Introduction*

Plaintiff, David Cabello, an inmate confined at SCI-Huntingdon, Huntingdon, Pennsylvania, filed this pro se 42 U.S.C. § 1983 action asserting that he was denied adequate medical care for his type II diabetes, and subjected to retaliation after he complained about that care. (Doc. 32 and 32-2, Am. Compl.).

Cabello has named as defendants the following present and former Department of Corrections (DOC) employees stationed at SCI-Huntingdon as defendants: former Superintendent James Grace, present Superintendent Raymond Lawler, and Corrections Health Care Administrator (CHCA) Mary Lou Showalter. Also named as defendants are the following contract medical care providers (the medical

defendants): Physician's Assistant (PA) Angela Auman, Dr. Olga Beresgovskava, Dr. Luis Araneda, and Dr. Joseph Romeo.[1]

Presently before the court is the DOC defendants' Motion to Dismiss the Amended Complaint based on the statute of limitations and Cabello's failure to state a claim against them.[2] The DOC Defendants have filed a Motion to Stay Discovery (doc. 52) pending our disposition of their motion.

For the following reasons, the DOC defendants' motion to dismiss will granted and their motion to stay dismissed as moot.

*II.   Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we must accept as true the factual allegations in the complaint and construe any inferences to be drawn from the allegations in the plaintiff's favor.  *Phillips v. County of*

---

[1] The DOC defendants and the medical defendants are represented by separate counsel.

[2] The DOC defendants filed their motion and supporting brief on September 24, 2008.  Cabello has not responded.  The Third Circuit has cautioned against granting motions to dismiss as unopposed "without any analysis of whether the complaint failed to state a claim upon which relief can be granted."  *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *see also Chocallo v. IRS Dep't of the Treasury*, 145 Fed. Appx. 746, 748 (3d Cir. 2005)(per curiam)(nonprecedential)("The District Court erred ... by relying on a local rule to grant the motion to dismiss a *pro se* litigant's complaint as unopposed without undertaking a merits analysis.")(emphasis in original).  Thus, because Cabello is appearing pro se in this matter, the court will conduct a merits analysis despite his failure to respond to the motion.

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  Detailed factual allegations are not required, *id.* at 231 (quoting *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, ___, 127 S.Ct. 1955, 1974, 167 L.Ed.2d. 929 (2007)), but the complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, ___ U.S. at ___, 127 S.Ct. at 1974.  "[M]ore than labels and conclusions" are required. *Id.* at ___, 127 S.Ct. at 1964-65.

Additionally, pro se pleadings are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652  (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  However, a complaint which sets forth facts affirmatively demonstrating that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

*III.   Background*

In his Amended Complaint, Cabello alleges he was diagnosed with type II diabetes by Dr. Beresgovskava and prescribed two tablets of Metformin, generically known as glucophage, daily.

-3-

(Doc. 32, Am. Compl. at R. 2.)[3]  Dr. Beresgovskava also told Cabello that various psychotropic medication he had received "for wrong diagnosis of mental illness likely increased the chances of [him] developing diabetes."  (*Id.*)

On May 7, 2006, Cabello, via a request slip to Dr. Beresgovskava, claimed to be experiencing a metallic taste as a side effect to the Metformin.  He did not know the exact nature of the metallic taste because he had been sick for the past week.  (*Id.*)

On July 17, 2006, Cabello went to sick call because he was experiencing "flu like symptoms."  (*Id.* at R. 3.)  He told PA Auman that on two occasions he had awakened in the middle of the night vomiting, dizzy, lightheaded, confused and extremely thirsty.  He also told PA Auman that he had lost his Metformin when he was released from the institution's restricted housing unit (RHU).  Although Cabello asked to see a doctor, PA Auman refused his request and failed to check his vitals, temperature or blood sugar.  PA Auman then issued Cabello a misconduct for being in an unauthorized area and lying to an employee.  (*Id.*)  Cabello claims this misconduct was issued in retaliation for his complaints about his medical care.

---

[3]   "R." or "RR." references are to the CM/ECF pagination of the document cited.

-4-

On July 20, 2006, Cabello signed up for sick call with complaints of headaches, chest discomfort, and abdominal pain. He was seen by Dr. Beresgovskava on August 4, 2006, and diagnosed with the flu. Dr. Beresgovskava prescribed ibuprofen, vitamins, and a snack pack. He also referred Cabello to the psychology department. Plaintiff continued to suffer from back pain, lightheadedness, dizzy spells, nausea, weakness, faintness, headaches and memory loss. (*Id.*)

At some point, PA Auman discontinued Cabello's self medication program for his diabetic medication, Metformin, and ordered that he be individually dosed with two tablets of 500 mgs. of Metformin for his diabetes. (*Id.*)

On August 15, 2006, Cabello signed up for sick call, complaining about lightheadedness, dizziness, and head rushes. On September 12, 2006, Cabello was signed up for sick call requesting bottom bunk status because of his lightheadedness and dizziness which "seemed to be caused from his diabetic medication Metformin." (*Id*. at R. 3.) Cabello believes he was treated as if he were making up stories.

Plaintiff was released from the RHU on September 15, 2006, and diagnosed with a urine infection on September 24, 2006, by Dr. Araneda. (Doc. 32-2, Am. Compl. at ¶ 9). Dr. Araneda

advised him that his lightheadedness was caused by the urine infection. (*Id.*)

On September 28, 2006, Cabello was issued a misconduct by Corrections Officer (CO) Loop, a non-defendant, for being in an unauthorized area. Plaintiff claims to have been in his cell. Cabello appealed the misconduct but Superintendent Grace and Superintendent Lawler "denied all due process to plaintiff, . . . disregarded plaintiff's allegations of retaliation," and failed to further investigate his claims by reviewing the cameras, which would have shown he was in his cell. Cabello also claims Hearing Examiner Mitchell, a non-defendant, failed to allow him any witnesses at the misconduct hearing. Cabello believes his receipt of this misconduct to be retaliatory for questioning his medical care. (*Id.*)

On October 6, 2006, while housed in the RHU, Plaintiff signed up for sick call due to unexpected and recent weight loss. PA Auman was not interested in Cabello's weight-loss concerns. (Doc. 32, Am. Compl. at R. 4, ¶ 10). Cabello continued to suffer from the same ailments as described above throughout the time he was taking two 500 mgs. tablets of Metformin as ordered. (*Id.* at ¶ 11). During this time, Cabello spent approximately nine months in and out of the RHU for false misconduct reports. He claims they were issued in retaliation for his grievances about being wrongly

-6-

diagnosed with a mental illness and being improperly prescribed medication for his illness for approximately two and a half years, which increased his chances of developing diabetes.  (*Id.* at ¶ 12).

Cabello also avers his diabetes was "overlooked" when he entered the DOC on August 4, 2004.  (*Id.*)  The "retaliation began when the plaintiff was sent from the mental health department to the medical department on January 30, 2006, because the mental health department discovered plaintiff's blood sugar tested high when he entered" the DOC.  (*Id.* at ¶ 13).  Shortly thereafter, he was "arbitrarily" discharged from his therapeutic community, a long-term drug- and alcohol-treatment program.  (*Id.*)  He was issued his first retaliatory misconduct on May 5, 2006; the second on July 17, 2006; the third on September 28, 2006; and the fourth after he was unable to provide a urine sample for a urine test. Cabello was given sixty days' disciplinary custody for each misconduct sanction.  (*Id.*).

Cabello lost approximately twenty-eight pounds while serving his first and second misconduct sanctions.  On June 15, 2006, he signed up for sick call requesting a "snack pack" because of his extreme hunger while in the RHU.  (*Id.* at ¶ 14).  PA Auman had "no concern" for plaintiff's condition.  It was not until

Cabello refused to take both Metformin tablets did his weight level and his glucose level stay in the target range for diabetics. (*Id.*)

While serving his disciplinary sanction for his third retaliatory misconduct, Cabello was seen by Dr. Romeo who told him his problem was with his "head and he may need to drill a whole in [his] head." However, Cabello's complaints were about his lower abdominal area. (*Id.* at ¶ 15).

It was not until Plaintiff started "to take only one 500 mg. tablet of Metformin instead of two 500 mg. tablets, that the symptoms he suffered lessen." (Doc. 32-2 at R. 2, ¶ 16). When Cabello informed CHCA Showalter that he was only taking one Metformin tablet, his self-med program was discontinued and he was ordered to take both tablets of Metformin. Nurses Jane Doe('s) refused to provide plaintiff with a refusal form. (*Id.*) CHCA Showalter is not a doctor; however, she "acted as if she had the skill and care ordinarily possessed and employed by members of the profession in good standing." (*Id.*) CHCA Showalter was careless and indifferent to Cabello's medical condition. (*Id.*)

On February 2, 2007, Cabello was released from the RHU and able to sign a refusal form to take both Metformin tablets. On April 16, 2007, Dr. Frederick Klemick informed Cabello that he was taking too much Metformin which caused his glucose levels to drop below the target range for diabetics. (Doc. 32, Amended Complaint

at R. 5, ¶ 17).  Cabello was then individually dosed and monitored to take one tablet of Metformin in the morning.  (*Id.*)  Plaintiff continued to suffer from the recurring side effects of the medication.  (*Id.*)

On June 21, 2007, plaintiff signed up for sick call regarding chest discomfort.  PA Brown diagnosed him with a muscle strain.  (*Id.* at ¶ 18).  Cabello signed up for sick call again on June 25, 2007, and requested to see a physician.  (*Id.*)  Cabello was seen by Dr. Romeo on June 27, 2007.  Cabello believes Dr. Romeo thought he was making up stories and also diagnosed him with muscle strain.  Dr. Romeo demonstrated a "lack of interest" in Cabello's medical condition.  (*Id.* at ¶ 19).

On November 13, 2007, when Cabello went to renew his script for the one Metformin tablet, PA Auman advised him that his liver enzymes were high, "and that she may discontinue [his] Metformin" for that reason.  (*Id.* at ¶ 20).  At that point, Cabello had been complaining of the Metformin's harmful side effects for more than a year.  (*Id.*)  On December 3, 2007, Cabello refused to take his Metformin.  (Doc. 32-2, Am. Compl. at R. 3, ¶ 21).  Since Cabello refused to take Metformin, he has not suffered from the recurring side effects, or adverse symptoms he experienced while on the Metformin.

On November 16, 2007, Cabello filed grievance # 207781. (Doc. 32, Am. Compl. at R. 5, ¶ 22). He filed an appeal to Superintendent Lawler on December 7, 2007, who "capriciously disregarded" his complaints. (*Id*.) Plaintiff filed an appeal to the Secretary's Office of Inmate Grievances and Appeals on December 25, 2007. (*Id*.) On January 8, 2008, Dorina Varner, Chief Grievance Officer, acknowledged receipt of the appeal and advised Cabello that her office sought "to solicit input from the Bureau of Health Care Services." (*Id*.) Cabello waited six months for a final disposition of his grievance, but the response did not address the fact that Cabello had physically suffered from a life-threatening condition called lactic acidosis and/or diabetic acidosis for an extended period of time. (*Id*.) Although the Secretary's Office of Inmate Grievances and Appeals denies receiving Final Grievance # 156307, a separate grievance, Plaintiff swears that he mailed it in a timely fashion to that office. (*Id*.)

Plaintiff avers that he has yet to have a full and adequate medical work up to determine what damage this repeated, long-term negligent treatment has had on his health. (*Id*. at ¶ 24). Cabello alleges that "the long duration of negligent treatment violates the Eighth Amendment." (Doc. 32, Amended Complaint, R. 6 at ¶ 25). "Defendants Grace, Lawler, and Showalter are by law to provide adequate medical services and they personally

breached that duty, and there is strong proof of a pervasive pattern of indifference to the plaintiff's medical needs, of which they possessed personal knowledge of generally." (Doc. 32-2, Am. Compl. R. 3 at ¶ 26). Cabello alleges the DOC defendants had a duty "to thoroughly investigate plaintiff's allegations of mistreatment." (*Id*. at ¶ 29).

*IV.     Discussion*

   *A. The Statute of Limitations*

The defendants argue the suit is barred by the statute of limitations. The statute of limitations for claims arising under 42 U.S.C. § 1983 is the state statute of limitations for personal injury actions, which in Pennsylvania is two years. *See Lake v. Arnold*, 232 F.3d 360, 368 (3d Cir. 2000); *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). The two-year statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." *Gentry v. Resolution Trust Corp*., 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted). "Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original,

timely filed complaint." *Singletary v. Pennsylvania Dep't Of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001).

We lack sufficient information to decide the limitations defense at this stage of the proceedings. The statute of limitations is subject to statutory tolling while a plaintiff exhausts his administrative remedies. *Howard v. Mendez*, 304 F. Supp. 2d 632, 638 (M.D. Pa. 2004)(Caldwell, J.)(citing 42 Pa. Cons. Stat. § 5535(b)). Plaintiff alleges he fully exhausted his administrative remedies, but we do not know the dates he pursued those remedies, or what issues were covered in each remedy, so we cannot determine what tolling, if any, of the limitations period is appropriate. Thus, we cannot determine when the statute of limitations would have expired. Although we deny the DOC's motion to dismiss on this basis, it does not prevent us from granting the motion on alternative grounds.

     *B. Grace and Lawler's Handling of Cabello's Grievance and Misconduct Appeals.*

Inmates do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 137-138, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977); *Speight v. Sims*, 283 Fed. Appx. 880 (3d. Cir. 2008)(per curiam)(nonprecedential)(citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure

confers no liberty interest on a prisoner.")  Cabello's dissatisfaction with the response to his grievances does not support a constitutional claim.  *See Ayala v. Terhune*, 195 Fed. Appx. 87, 91-92 (3d Cir. 2006)(per curiam)(nonprecedential); *see also Alexander v. Gennarini*, 144 Fed. Appx. 924 (3d Cir. 2005)(per curiam) (nonprecedential).  Thus, Cabello's claims against Grace and Lawler for their handling of his grievances or appeals fail to state a claim for which relief can be granted.  Further, the fact that these defendants allegedly responded inappropriately to Cabello's grievances about unconstitutional acts that occurred prior to their review of his grievances or appeals does not establish their personal involvement in the alleged wrongdoing sufficient to assert a Section 1983 claim.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Additionally, liability under § 1983 cannot be based solely on a theory of respondeat superior.  *Id.*  Thus, Cabello's claim that Grace and Lawler violated his constitutional rights by denying his various grievances and/or appeals will be dismissed.

> *C. Claims of Deliberate Indifference Against the DOC Defendants.*

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference

to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id*. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (prison personnel who are not physicians

cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff).  If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed.  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Based on the averments in the Amended Complaint, Cabello's claim of deliberate indifference to his diabetic condition against Grace and Lawler stem from their alleged improper handing of his grievance and misconduct appeals.  These allegations, however, do not rise to the level of deliberate indifference for the reasons stated above.  Further, Cabello does not allege that either Grace or Lawler are physicians, which they are not in any event.  Both were aware of his concerns regarding his medical care, but they were also aware that Cabello was being treated by the institution's physicians.  Thus, Grace and Lawler cannot be found deliberately indifferent to Cabello's medical needs under the Eighth Amendment because they deferred to the medical judgment of Cabello's treating physicians.  *Durmer, supra,* 991 F.2d at 69.

Cabello's claim against CHCA Showalter is equally inadequate.  Cabello's claim against CHCA Showalter is limited to

her changing the manner in which he received his physician-prescribed medications. She did not withhold medication nor did she alter the prescribed medication or dosage. CHCA Showalter simply revoked Cabello's privilege of self-dosing after he advised her that he was not taking his medication as prescribed. The only consequence of CHCA Showalter's action was that Cabello was required to come to the pill line to be individually dosed with the prescribed medication due to his non-compliance with his prescribed medical care regimen. (*See* Doc. 32-2, Amended Complaint, R. 2 at ¶ 16). Thus, Cabello's claim against CHCA Showalter also fails to state a claim of deliberate indifference to a serious medical need. Cabello's Eighth Amendment claims against the DOC defendants will therefore be dismissed.

*D. DOC Defendants' Motion to Stay Discovery.*

A stay of discovery pending the determination of such a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Coastal States Gas Corp. v. Department of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979) (citations omitted). As we are granting the DOC defendants' motion to dismiss, their motion to stay discovery will be dismissed as moot.

The DOC defendants are now relieved from responding to Cabello's discovery requests.

        We will issue an appropriate order.

                                      <u>/s/William W. Caldwell</u>
                                      William W. Caldwell
                                      United States District Judge

Date: December 9, 2008

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


   DAVID CABELLO,                    :
                                     :
        Plaintiff                    :
                                     :    CIVIL NO. 1:CV-08-1334
        vs.                          :
                                     :    (Judge Caldwell)
   JAMES L. GRACE,                   :
   SUPERINTENDENT, ET AL.,           :
                                     :
        Defendants                   :
```

*O R D E R*

AND NOW, this 9th day of December, 2008, for the reasons set forth in the accompanying Memorandum, it is ordered that:

1. The DOC Defendants' Motion to Dismiss the Amended Complaint (Doc. 35) is granted.

2. All claims against the DOC defendants (Grace, Lawler and Showalter) are dismissed, and these defendants are dismissed from this action.

3. The DOC defendants' Motion to Stay (Doc. 52) is dismissed as moot.

                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge